UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| WILSON ALTAMIRANO and | : | |
| MARGARITA RUIZ, | : | |
|     Plaintiffs, | : | |
| | : | |
| v. | : | Civil No. 3:06cv1751 (PCD) |
| | : | |
| COPIAGUE FUNDING CORP., d/b/a | : | |
| SOUTH SHORE MORTGAGE COMPANY | : | |
|     Defendant. | : | |

**<u>RULING ON PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ON COUNT TWO</u>**

Plaintiffs Wilson Altamirano and Margarita Ruiz bring this action against Defendant Copiague Funding Corporation, doing business as South Shore Mortgage Company, alleging violations of the Federal Truth in Lending Act, 15 U.S.C. § 1601, *et seq.* and the Connecticut Truth in Lending Act, Conn. Gen. Stat. ("C.G.S.") § 36a-676, *et seq.* (Count Two). Plaintiffs have filed a Motion for Summary Judgment on Count Two claiming that Defendant failed to comply with the federal and state Truth in Lending Acts ("TILA") when making both the estimated and final TILA disclosures to Plaintiffs regarding a mortgage refinance. Plaintiffs have also alleged violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.* (Count One), the Connecticut Unfair Trade Practices Act ("CUTPA"), C.G.S. § 42-110a, *et seq.* (Count Three), and the common law torts of negligence or, alternatively, intentional misrepresentation (Count Four), but Plaintiffs have not moved for summary judgment as to those counts. For the reasons stated herein, Plaintiffs' Motion for Summary Judgment as to Count Two only [Doc. No. 37] is **GRANTED**.

**I.    Background**

Because this case is at the summary judgment stage, the Court views the record in the

light most favorable to Defendant, as the non-moving party. See *Terry v. Ashcroft*, 336 F.3d 128, 139 (2d Cir. 2003). Plaintiffs Wilson Altamirano and Margarita Ruiz are a husband and wife who own a home in Manchester, Connecticut. (Pls.' Aff. ¶ 4.) Defendant Copiague Funding Corporation, doing business as South Shore Mortgage Company, is a Connecticut-licensed first mortgage lender, with a place of business in Lindenhurst, New York. (Compl. ¶¶ 6-7.)

In the summer of 2005, Plaintiffs received a telephone solicitation from Defendant, offering to refinance their mortgage loan. (Compl. ¶ 10.) In January 2006, Plaintiffs contacted Defendant to discuss the offer. (*Id.*) During this discussion, Plaintiffs informed Defendant that they wanted to refinance their existing mortgage, consolidate their debt, and borrow $30,000 for home improvements. (Compl. ¶ 11.) Plaintiffs subsequently supplied the information requested and applied for the mortgage loan. (Compl. ¶ 14.)

On January 5, 2006, Defendant gave Plaintiffs a Good Faith Estimate and an estimated TILA disclosure statement. (Compl. ¶¶ 15-17.) The Good Faith Estimate stated that the combined principal and interest payment on the mortgage loan would be $1,049.21 per month. (Pls.' Ex. A.) The form also estimated a monthly charge for "Mortgage Insurance," otherwise known as "private mortgage insurance" or "PMI," of $86.04. (*Id.*) The estimated TILA disclosure form stated that the mortgage loan would require 360 monthly payments of $1,049.21. (Pls.' Ex. B.) However, on this form, bearing the same date as the Good Faith Estimate, there was no indication that Plaintiffs would also be charged for PMI. (*Id.*) Instead, the form only indicated that Hazard Insurance would be required. (*Id.*) Significantly, the box labeled "Private Mortgage Insurance" was not checked, and a footnote beneath the payment schedule explicitly stated that the monthly payment of $1,049.21 "includes mortgage insurance premiums." (*Id.*)

2

Plaintiffs were ultimately approved for the loan and were given a final TILA disclosure at the closing on February 9, 2006. (Pls.' Ex. C.) This final disclosure reflected 102 monthly payments of $1,139.63, followed by 257 monthly payments of $1,049.21, and one final payment of $1,052.71. (*Id.*) This form contained a line stating: "THE FOLLOWING INSURANCE IS REQUIRED TO OBTAIN CREDIT: PROPERTY INSURANCE." (*Id.*) The final disclosure did not indicate that PMI was required to obtain the loan or that the larger payments for the first 102 months were attributable to PMI. (Compl. ¶ 20.) At closing, Plaintiffs were also given a document entitled "First Payment Letter," which indicated that Plaintiffs would be required to pay an additional $90.42 a month for "MIP/PMI" for the first 102 months, in addition to the monthly principal and interest payments of $1,049.21. (Pls.' Ex. D.)

Under the final terms of the transaction, Plaintiffs borrowed $175,000.00. (Compl. ¶ 22.) The loan paid off Plaintiffs' existing mortgage in the amount of $154,930.77, paid off Plaintiffs' $322.00 phone bill, and included a disbursement of $9,812.40. (*Id.*) The finance charges totaled $219,867.28 and the settlement charges were $8,245.00, excluding escrow amounts and daily interest. (*Id.*)

## II.    Standard of Review

Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). No genuine issue of material fact exists and summary judgment is therefore appropriate when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S.

3

574, 587 (1986). A material fact is one which "might affect the outcome of the suit under the governing law," and an issue is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, "[c]onclusory allegations will not suffice to create a genuine issue." *Delaware & H.R. Co. v. Conrail*, 902 F.2d 174, 178 (2d Cir. 1990). The moving party bears the burden of establishing that summary judgment is appropriate. *Anderson*, 477 U.S. at 225. "A [moving party] need not prove a negative when it moves for summary judgment on an issue that the [non-moving party] must prove at trial. It need only point to an absence of proof on the [non-moving party's] part, and, at that point, the [non-moving party] must 'designate specific facts showing that there is a genuine issue for trial.'" *Parker v. Sony Pictures Entm't, Inc.*, 260 F.3d 100, 111 (2d Cir. 2001) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). In TILA cases, where "the sole issue is whether required disclosures have been made clearly and conspicuously, or whether additional disclosures confuse or mislead, the court may appropriately decide the plaintiff's claims as raising issues of law." *Aubin v. Residential Funding Co., LLC*, —F. Supp. 2d —, No. 3:07cv302(MRK), 2008 WL 2736037, at *1 (D. Conn. July 11, 2008) (quoting *Gambardella v. G. Fox & Co.*, 716 F.2d 104, 113 (2d Cir. 1983)).

### III. Discussion

#### A. Final TILA Disclosures

The Truth in Lending Act was created by Congress as a way "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. § 1601(a). In

4

order to ensure this meaningful disclosure, the information required by the Truth in Lending Act must be disclosed "clearly and conspicuously, in accordance with the regulations of the Board." 15 U.S.C. § 1632 (a). In particular, the terms "annual percentage rate" and "finance charge" should be disclosed more conspicuously than other terms in connection with a credit transaction. *Id.* Private mortgage insurance ("PMI") is a finance charge and must be included in the calculation of the finance charges and the annual percentage rate for the loan. Off'l Staff Comm. to Reg. Z, 12 C.F.R. Pt. 226, Supp. I at ¶ 4(a)(1).

Full compliance with TILA is imperative,` notwithstanding the highly technical requirements of the Act. *Clement v. American Honda Finance Corp.*, 145 F. Supp. 2d 206, 210 (D. Conn. 2001). "TILA is a remedial act intended to protect consumers. . .and, as such, its provisions are to be construed liberally in favor of consumers." *Id.* (quoting *Belmont v. Associates National Bank*, 119 F. Supp. 2d 149, 159 (E.D.N.Y. 2000)). "TILA achieves its remedial goals by a system of strict liability in favor of the consumers when mandated disclosures have not been made." *Id.* (quoting *Smith v. Fidelity Consumer Discount Co.*, 898 F.2d 896, 898 (3d Cir. 1990)). The court need only find "a single violation of the statutory requirements to hold [a] defendant liable under TILA." *Id.* (quoting *Griggs v. Provident Consumer Discount Co.*, 503 F. Supp. 246, 248 (E.D. Pa 1980)). The Connecticut and federal TILA statutes have "identical" disclosure requirements, and any violation of the federal Act is deemed a violation of the state Act. See C.G.S. § 36(a)-677(b)-(c).

Any disclosures required by the Truth in Lending Act ("TILA" or "the Act") must be set forth "clearly and conspicuously." 15 U.S.C. § 1632 (a). What constitutes clear and conspicuous "is measured by an objective, rather than a subjective test; thus, the question courts ask is

5

whether the average customer would find the notice clear or confusing." *Aubin*, 2008 WL 2736037, at *2. TILA, and the regulations set forth under the Act, require a creditor to disclose "relevant credit information to a consumer in comprehensible language and form." *Clement*, 145 F. Supp. 2d at 210 (quoting *Griggs*, 503 F. Supp. at 249). "The required disclosures are intended to provide, especially to the inexperienced and uninformed customer, a way to avoid 'the possibility of deception, misinformation, or at least an obliviousness to the true costs' of a credit transaction." *Id.* Plaintiffs assert that the final TILA disclosure statement given to them at closing violated the clear and conspicuous requirement of TILA because it failed to properly disclose the private mortgage insurance requirement. Pls.' Mem. of Law in Supp. of Mot. for Summ. J. at 10. Plaintiffs claim that the final TILA disclosure did not clearly indicate that the loan included or required PMI. (*Id.* at 1.) In addition, Plaintiffs claim that the contradiction between the final TILA disclosure and the estimated TILA disclosure and the Good Faith Estimate previously provided to them, as well as differences between the final TILA disclosure and the First Payment Letter provided at closing, contributed to the unclear nature of the final TILA disclosure with respect to the inclusion of PMI in the loan. (*Id.*)

When Plaintiffs were issued their final TILA disclosure, the form indicated that, for the first 102 payments, Plaintiffs would be required to pay $1,139.63. Pls.' Ex. C. Although this was a nearly one hundred dollar increase from the initial payment indicated in the Estimated TILA disclosure form, there was no indication that the additional required payment was a result of PMI. To the contrary, the final TILA disclosure only required that Plaintiffs obtain property insurance to secure their loan. Pls.' Ex. C. This insurance requirement was spelled out in the note: "INSURANCE: THE FOLLOWING INSURANCE IS REQUIRED TO OBTAIN

CREDIT: PROPERTY INSURANCE." (*Id.*) No other insurance was listed as required, including PMI. Plaintiffs were made aware of the PMI payment only via the First Payment Letter, also delivered at the closing. Pls.' Ex. D. This payment letter listed the MIP/PMI charge in a separate line item as $90.42. (*Id.*)

The final TILA Disclosure Statement given to the Plaintiffs at closing did not state that PMI was required for the loan and listed only property insurance as required. In contrast, other loan documents provided at closing, like the First Payment Letter, stated that PMI was required and included the PMI charge in the calculation of the first group of monthly payments. (*Id.* at 11.) The final TILA disclosure was rendered more confusing when considered in light of the estimated TILA disclosure, which had indicated both that PMI was not required and that the $1049.21 monthly payment, $100 per month lower than that listed in the final TILA disclosure, "[included] mortgage insurance premiums."

Since the final TILA disclosure statement was capable of several conflicting interpretations, it was not "clear and conspicuous," and therefore, did not meet the strict requirements of TILA. Specifically, where the final TILA disclosure does not enumerate that private mortgage insurance is required insurance for the loan, yet other loan documents, including additional final forms like the First Payment Letter, list the private mortgage insurance as part of the required payment, "such disclosure [is] not clear and conspicuous." *Madel v. GMAC Mortg. Corp. (In re Madel)*, 2004 Bankr. LEXIS 2367, *18 (Bankr. E.D. Wis. 2004) (where the final TILA disclosure showed that the monthly payment was $300 higher than originally disclosed in the preliminary TILA disclosure statement, yet PMI was not specifically listed as required insurance on the final disclosure and was only enumerated in the First Payment

7

Letter, such a disclosure was not clear and conspicuous). Based on the various conflicting forms provided, it was not clear whether PMI was required or included. Therefore, the finance charge was not clearly and conspicuously disclosed as required by the Truth in Lending Act. *Id.*

### B. "Safe Harbor" Provision

Defendant maintains that the final TILA disclosure delivered at closing, together with other PMI disclosures also delivered at closing, corrected any prior disclosures related to PMI, and therefore rendered any prior inaccurate disclosures non-actionable under 15 U.S.C. § 1640 (b). Def.'s Mem. of Law in Opp'n to Mot. for Summ. J. at 5. 1640(b) states:

> A creditor or assignee has no liability under this section or section 1607 of this title or section 1611 of this title for any failure to comply with any requirement imposed under this part or part E of this subchapter, if within sixty days after discovering an error, whether pursuant to a final written examination report or notice issued under section 1607(e)(1) of this title or through the creditor's or assignee's own procedures, and prior to the institution of an action under this section or the receipt of written notice of the error from the obligor, the creditor or assignee notifies the person concerned of the error and makes whatever adjustments in the appropriate account are necessary to assure that the person will not be required to pay an amount in excess of the charge actually disclosed, or the dollar equivalent of the annual percentage rate actually disclosed, whichever is lower.

Defendant contends that since Plaintiffs were provided with the correct PMI disclosures at closing, which was within sixty days of the initial disclosures, they are protected under 1640(b). Def.'s Mem. of Law in Opp'n to Mot. for Summ. J. at 6. As discussed above, the final TILA disclosure was itself noncompliant, and as such, cannot be said to have corrected any earlier errors. Further, in order to qualify for 1640(b)'s "safe harbor" from liability, creditors must do more than simply provide borrowers with the correct figures in subsequent disclosure forms and payment letters. Instead, 1640(b) requires creditors to affirmatively "[notify] the person

8

concerned of the error and [make] whatever adjustments in the appropriate account are necessary to assure that the person will not be required to pay an amount in excess of the charge actually disclosed." Defendant never explicitly notified Plaintiffs and called to their attention the errors contained in both the estimates and final disclosures; instead, Defendant merely added the PMI line item to the Final Payment Letter. Pls.' Ex. D. This does not constitute adequate notice. Since no notification was given in compliance with the standards of 1640(b), Defendant is not entitled to a "safe harbor" from liability under TILA.

Accordingly, Plaintiffs are entitled to summary judgment because Defendant failed to disclose all of the necessary finance charges, including private mortgage insurance, in a clear and conspicuous manner that would afford full compliance with the Truth in Lending Act. In addition, Defendant is not free from liability under 15 U.S.C. § 1640(b) since Defendant did not properly notify Plaintiffs of the errors. Defendant violated a fundamental provision of the Truth in Lending Act by not ensuring that the disclosure of PMI in the final TILA disclosure was "clear and conspicuous." Therefore, summary judgment is granted as to Count Two.

### C. Estimated TILA Disclosures

Assuming *arguendo* that the final disclosures had been TILA compliant, Plaintiffs would still be entitled to summary judgment because the initial TILA estimates given to Plaintiffs were not compliant with TILA standards. Pursuant to 15 U.S.C. § 1631(c), estimates may satisfy the statutory standards of the Truth in Lending Act. However, these estimates may only be given "where the provider of such information is not in a position to know exact information." *Id.* Estimates must be based information available to the creditor, and if "any information necessary for an accurate disclosure is unknown to the creditor, the creditor shall make the disclosure based

9

on the best information reasonably available at the time the disclosure is provided to the consumer and shall state clearly that the disclosure is an estimate." 12 C.F.R. § 226.17(c)(2).

While "variance between estimates and terms of actual loans is not *per se* evidence of TILA violations," the Good Faith Estimate and the estimated TILA disclosure given to Plaintiffs not only conflicted with the final TILA disclosure form and the First Payment Letter, they also conflicted with one another. *In re McNinch*, 250 B.R. 848, 855 (Bankr. WD. Pa. 2000); Pls.' Ex. A, B. Specifically, the Good Faith Estimate listed a monthly PMI charge, while the estimated TILA disclosure provided on the same day indicated that PMI was not required. This conflicting information is susceptible to more than one plausible interpretation and as such is not clear and conspicuous, and therefore violates TILA.

The Good Faith Estimate ("GFE") was given to Plaintiffs the same day as the estimated TILA disclosure statement, on January 5, 2006. Pls.' Ex. A, B. While the GFE included a line item Mortgage Insurance charge of $86.04 and a "Principal and Interest" charge of $1,049.21, the estimated TILA disclosure statement shows only a monthly payment of $1,049.21, with no additional charges. Pls.' Ex. A, B. In fact, the estimated TILA disclosure statement even goes so far as to say, in a footnote, that the monthly payment listed "includes mortgage insurance premiums" and a check box for PMI is left unmarked. Pls.' Ex. B. These two documents, intended to give Plaintiffs a good faith estimate of the charges they could expect, are in conflict and as such are far from "clear and conspicuous." Since the estimates are "capable of more than one plausible interpretation," they do not meet the stringent TILA standards. *Madel v. GMAC Mortg. Corp. (In re Madel)*, 2004 Bankr. LEXIS 2367, *18 (Bankr. E.D. Wis. 2004)

Defendant argues that both the Good Faith Estimate and the estimated TILA disclosure

form were accurate when the circumstances under which the disclosures were made are considered. Def.'s Mem. of Law in Opp'n to Mot. for Summ. J. at 2. Defendant states that Plaintiffs informed them that their property was worth $220,000. (*Id.*) Consequently, based on the Plaintiffs' representation, Defendant did not expect that the loan amount would not exceed 80% of the value of the home. (*Id.*) Only loans above the 80% threshold require Private Mortgage Insurance. (*Id.*) Therefore, Defendant maintains that it believed Plaintiffs' loan would not require PMI, and that is why PMI was not included in the estimated TILA disclosure form. (*Id.*) The GFE, on the other hand, was prepared to show estimated charges, and it included an estimated amount for PMI in the event that the property did not appraise at a level sufficient to avoid PMI. (*Id.*) However, nothing in the Good Faith Estimate makes the adjustment for this contingency transparent, and there is nothing to indicate that the GFE was only based on such an anticipated lower assessment of the value of Plaintiff's home. In addition, TILA requires that a creditor make any estimates and preliminary disclosures based on the "best information reasonably available." 12 C.F.R. § 226.17(c)(2). It is not logical that the best information reasonably available would differ between the two estimates issued the same day.

In addition, Plaintiffs point out that Defendants have produced no documentation to support Defendant's assertion that Plaintiffs estimated their home's value at $220,000. Pls.' Reply to Def.'s Resp. to Mot. for Summ. J. at 2. Furthermore, Plaintiffs argue that the affidavit offered by Defendant in support of this contention was not made by someone with personal knowledge regarding the transactional dealings with Plaintiffs. *Id*. Even assuming that Plaintiffs did represent their home to be worth $220,000, Defendant's inconsistent estimates, with one relying on the value allegedly assigned by Plaintiffs and the other implicitly doubting it, are

11

unclear and confusing and thereby violate TILA.

The GFE and the estimated TILA disclosure were contradictory and confusing, hence they do not meet TILA standards. Therefore, summary judgment would have been granted to the Plaintiffs on the basis of the faulty estimates even if they had not prevailed with respect to the inadequacy of the final TILA disclosures.

**D.     Damages**

For the TILA violations, Plaintiffs seek an award of "statutory damages of $2,000, actual damages in an amount to be determined at trial, and a reasonable attorney fee." (Compl. Prayer for Relief ¶ 5.) The Truth in Lending Act provides for statutory damages in "an individual action relating to a credit transaction not under an open end credit plan that is secured by real property or a dwelling, not less than $200 or greater than $2,000." 15 U.S.C. § 1640(a)(2)(A)(iii). In light of the TILA violations elaborated above, the Court hereby awards Plaintiffs $2,000 in statutory damages.

**IV.     Conclusion**

For the reasons stated herein, Plaintiffs' motion for summary judgment as to Count Two only [Doc. No. 37] is hereby **GRANTED**. A Trial Preparation Order will issue as to the remaining counts.

SO ORDERED.

Dated at New Haven, Connecticut, August 18, 2008.

/s/
Peter C. Dorsey, U.S.D.J.